**ROYAL INDEMNITY CO v HEIER**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1113.   Decided July 29, 1932

James & Coolidge, Dayton, and D. L. Dwyer, Dayton, for plaintiffs in error.

W. S. Rhotehamel, Dayton, and I. L. Jacobson, Dayton, for defendant in error.

BY THE COURT

The original action in the court below was brought by John Heier against The Royal Indemnity Company for damages for false imprisonment, (malicious prosecution, see opinion on rehearing).

On the trial the jury returned a verdict for $15,000.00. A motion for a new trial was filed and overruled and judgment was rendered on the verdict.

A petition in error has been presented to this court.

It is claimed that the trial court erred:

(1) In overruling the motion made at the close of the evidence of the plaintiff below and also at the close of all the evidence to direct a verdict for the defendant, The Royal Indemnity Company on the ground that the evidence fails to show that plaintiff in error—The Royal Indemnity Company—caused the arrest and imprisonment of the plaintiff, Heier.

(2) That the evidence shows conclusively that Heier was guilty or at least that there was reasonable ground for the prosecution.

(3) That the testimony of Ralph Hoskett, The Prosecuting Attorney and of Byron Harlan, who were eminent counsel, show that the facts and evidence was fully submitted to them and that they gave an opinion in favor of the prosecution of Heier.

(4) That the verdict and judgment are excessive.

These are the principal questions of law presented by the petition in error. The evidence offered on the trial at least tends to prove that the Royal Indemnity Company was admitted to do an insurance and surety business in Ohio and that it appointed Arnold S. Althorp as its agent in the transaction of its business in Ohio. John Heier was the bidder for certain contracts for the improvement of Lutz, Overlook and

Mapleview Avenues in the city of Dayton. The bidding reached the point where it was determined that Heier was entitled to the bid and was required to give a bond. He applied for surety to Althorp as the agent of The Royal Indemnity Company. The Royal Indemnity Company, by Althorp, its agent, signed the bond as surety for Heier. In negotiating between Heier and Althorp an agreement was entered into for division of the funds arising from these improvements on the theory that Althorp would furnish the cash money and credit needed. This was done and the fund received from the work done on the improvement was to be received and was received by Heier per E. M. Kastner, who was the confidential agent of Althorp. Later on a difficulty arose between Heier and Althorp as to these funds. Althorp was represented by Byron Harlan, an attorney at Dayton, Ohio. It was determined to prosecute Heier upon the ground that he was not authorized to sign the name of certain contractors or alleged contractors, to-wit, Rogers and Griffith, to vouchers and receive the money therefrom. It was therefore determined by Althorp and Harlan to prosecute Heier upon the charge of forgery in connection with these vouchers. An affidavit was filed in the Municipal Court by Harlan charging Heier with this offense. Later on the grand jury in charge of Ralph Hoskett, as Prosecuting Attorney, found an indictment to the same effect. The indictment was continued from time to time for a period of several months and was then nolled. Whereupon this action was brought against the Indemnity Company for damages.

These facts were shown on the trial and it was also shown that Byron Harlan represented The Royal Indemnity Company in an action pending against Heier upon the bond which concerned the Washington Avenue job.

The question is whether it sufficiently appears from the evidence on the trial that the Indemnity Company was instrumental in causing these arrests. Had Althorp confined his activities to the business for which he was constituted by the Indemnity Company, there would be little doubt of his authority to bind the company in his conduct in respect to the criminal prosecution. Althorp, however, by his contract with Heier assumed a dual capacity. He acted for himself in the consideration of his individual interest under his contract with Heier and he was also authorized to act as agent of The Royal Indemnity Company. Counsel for Heier rely upon the authority of **Pennsylvania R. R. Co. v Deal, 116 Oh St, 408.** In the case cited the affidavit had been filed by A. J. Russell, a detective and railroad policeman employed by the Railway corporation and also duly appointed under the statutes of this state as a police officer. It was a question whether Russell was acting as agent of the Railroad Company or as a police officer under appointment by the state. The trial court charged that if Russell was acting exclusively as a state officer the arrested party could not hold the railroad company for malicious prosecution, but if he was not acting for the state exclusively, but concurrently and jointly therewith, under appointment from the Railroad Company, then the Railroad Company would be liable.

We think the doctrine of the case cited applies to the present case. To this may be added the fact that Harlan was also an attorney for The Indemnity Company in the Washington Avenue case. Taking these two circumstances together we think there is enough in the evidence of the plaintiff to justify the court in overruling the demurrer to the evidence at this stage. When the second demurrer to the evidence was interposed at the conclusion of all the evidence, the court was justified in overruling the motion and submitting the case to the jury.

The next question relates to the advice of counsel. The evidence tends to show that when Althorp and Harlan came to the prosecuting attorney's office in regard to the prosecution, they were told to file the proceedings before the Municipal Court. The prosecuting attorney's office took no part in that proceedings. The affidavit was filed, signed by Harlan and warrant issued and bond given. When the case came before the grand jury, Ralph Hoskett was the Prosecuting Attorney and he with his assistant presented the case to the grand jury and secured the indictment. There is evidence tending to prove that the case was gone over with Ralph Hoskett who advised the indictment. The case was also gone over with Harlan who advised the prosecution. Counsel for the plaintiff contends that advise of counsel is a complete defense. That depends upon the nature of the statement of the case to the counsel. Was it fully stated and were all the facts given? Even assuming that they were, the question of advice of counsel is one of the questions to be submitted to the jury. The court has no right to decide the entire case upon the question of the good faith of counsel fully stating the case to the prosecuting attorney and Mr. Harlan,

obtaining their judgment thereon. The court had no right upon either motion to dismiss the case upon the ground of advice of counsel. When the case went to the jury the charge was full and complete upon these issues and no prejudicial error ensued in respect thereto. Counsel for the plaintiff in error contends that according to Heier's own testimony he was justly indicted. We have read the testimony of Mr. Heier and we cannot agree with this contention. Heier testifies that Griffith authorized him to sign his name to the checks and receive and apply the proceeds to his indebtedness. Heier and other witnesses testified and Griffith afterwards admitted that he did not testify truthfully on this subject. There was other testimony corroborating Heier. All these questions were therefore for the jury to decide.

Counsel complain of the failure of the court to give special charge No. 3. This charge is as follows:

"If you find the plaintiff, John Heier, caused the Rogers and Griffith checks, Defendant's Exhibits 2 to 11, to be issued by Miss Kastner, and that he either with or without the authorization of Rogers and Griffith endorsed and cashed the same and retained the proceeds thereof without authorization, knowledge or consent of Arnold Althorp thereto, then I instruct you that your verdict must be for the defendant."

Inasmuch as the arrest of Heier was upon the charge of forgery, we do not see the applicability of this charge and the court was therefore justified in refusing the same.

It is claimed that there was no showing of want of probable cause. We are clear, however, that the question was before the jury and that there was evidence sufficient to justify the jury in making a finding in favor of Heier upon this subject.

The next question relates to the verdict of the jury. Upon the participation of the Indemnity Company in the prosecution and arrest of Heier, we are clear that there was sufficient evidence to justify the verdict or at least that the verdict was not so contrary to the weight of the evidence as to justify this court in reversing upon that ground.

The next question is as to the amount of the verdict. The jury returned a verdict for $15,000.00. We cannot escape the view that the amount returned by the jury, to-wit, $15,000.00 was manifestly excessive. If the plaintiff will remit from the amount of the verdict the sum of $5000.00, so as to leave the amount due as $10,000.00 with interest from the date of the judgment, the same will be affirmed. Otherwise, it will be reversed upon the single ground that the verdict is excessive. Judgment accordingly.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.

## ON MOTION FOR REHEARING

Decided Sept 24, 1932

BY THE COURT

This cause is submitted upon a motion for rehearing. The motion is made by The Royal Indemnity Company. Counsel for the indemnity company urge that they should be heard and reargue the case. We are of opinion that under the rules of this court the case must be submitted upon the motion and the briefs. We do not consider that there is any valid reason for reargument of the case.

The first proposition in the motion challenges the regularity of the consideration of the case by the court. The proposition stated is that the court did not in the opinion of counsel have all the briefs before it, did not have the pleadings and did not have any portion of the record except the bill of exceptions.

The fact is that this case was considered both at Columbus and Dayton by the entire court. All the papers were in each instance before the court for consideration. This included the briefs of all counsel in the case.

Again it is urged that the judge who wrote the opinion must have misunderstood the nature of the case. In the opening paragraph of the opinion it was stated that the action was one for false imprisonment, whereas the action was one for malicious prosecution. This was a mistake of the Judge (Allread) who wrote the opinion. We regret that this occurred, but after the first paragraph in the opinion there is a discussion of the principles applying to malicious prosecution. We think there is no error in this statement justifying a reversal.

Upon the question as to the plaintiff in error's responsibility for the prosecution as a question of law we were and still are in some doubt, but after a full consideration of the case we reach the conclusion that the trial judge was right in submitting the question to the jury.

The question of the participation of the Indemnity Company in the prosecution and

of its malice and of want of probable cause was therefore one for the consideration of the jury.

Counsel in their application for a rehearing cite the Western Oil Refining Company v Glendening, 156 NE, page 182.

In this case the fourth and fifth syllabi indicate the difference between that case and the present. The fourth proposition of the syllabus is as follows:

"Where citizen, without malice, reports to proper officer any violation of criminal law in state, and also thereafter makes an independent investigation of matter reported to him, and following such investigation returns an indictment or information, person making report is not liable in damages because of prosecution growing out of independent investigation."

It will be noted that the citizen sought to be held liable acted "without malice." In the present case, after the jury found that the indemnity company caused the prosecution it would be further necessary for the jury to find, in order to apply this case, that the indemnity company acted "without malice." The fifth proposition is as follows:

"A person has not caused a prosecution in a sense that renders him liable therefor when he acts only in subordination to prosecuting attorney, and under the latter's direction, nor when he states fair facts to such attorney, leaving him to judge of propriety of proceeding with charge."

This court has re-read the bill of exceptions and re-examined the briefs and upon a careful review of the evidence we are unable to find that the verdict is contrary to the evidence or is the result of passion and prejudice. While the evidence is not clear and strong, we think there was evidence from which the jury could draw the inference that the indemnity company caused this proceeding to be instituted, that its action was malicious and without probable cause. These were questions for the jury, and this court is unable to find that their verdict is contrary to the clear and manifest weight of the evidence upon the basic proposition as to the liability of the indemnity company.

We do, however, determine that the verdict is excessive and that unless the plaintiff in the court below remits the sum of $5000.00 the verdict must be set aside. We concede that this is a large amount to include in a remittitur. The claim may be made that this remittitur is in itself proof that the verdict was the result of bias and prejudice. We do not, however, so regard it, but adhere to the former opinion. Finding no sufficient ground to justify a motion for a rehearing, we are of opinion that the same must be overruled.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.